IN THE SUMMIT COUNTY COURT OF COMMON PLEAS
SUMMIT COUNTY, OHIO

| | | |
|---|---|---|
| MS. SUSAN K. LINDSLEY | ) | |
| PO Box 397 | ) | |
| LAKEMORE, OH 44250 | ) | CASE NO. |
| | ) | |
| R.M., a Minor Child | ) | |
| c/o Paul Kelley, Esq. | ) | Judge |
| 540 S. Water St. | ) | |
| Kent OH 44240 | ) | |
| | ) | |
| G.M., a Minor Child | ) | |
| c/o Paul Kelley, Esq. | ) | |
| 540 S. Water St | ) | |
| Kent OH 44240 | ) | |
|          Plaintiffs | ) | |
|   -vs- | ) | |
| | ) | **COMPLAINT** |
| SPRINGFIELD TOWNSHIP | ) | **(JURY DEMAND ENDORSED** |
| 2459 CANFIELD ROAD | ) | **HEREON)** |
| AKRON OH 44312 | ) | |
| | ) | **(previously filed as CV 2018-03-1223)** |
|   -and- | ) | |
| VILLAGE OF LAKEMORE | ) | |
| 1400 MAIN ST | ) | |
| LAKEMORE OH 44250 | ) | |
| | ) | |
| | ) | |
|   -and- | ) | |
| | ) | |
| OFFICER JAMIE L. MIZER | ) | |
| 506 LESSIG AVE | ) | |
| AKRON, OH  44312 | ) | |
| | ) | |
| (This individual is sued in her official and | ) | |
|  individual capacity) | ) | |
| | ) | |
|   -and- | ) | |
| | ) | |
| RICHARD JUSTICE | ) | |
| PO Box 163 | ) | |
| LAKEMORE, OH  44250 | ) | |
| | ) | |
| (This individual is sued in his official and | ) | |

individual capacity)                    )
                                        )
        -and-                           )
                                        )
CHIEF OF POLICE KENNETH RAY             )
C/O THE VILLAGE OF LAKEMORE             )
1400 MAIN STREET                        )
LAKEMORE, OH  44250                     )
                                        )
(This individual is sued in his official and  )
 Individual capacity)                            )
                                        )
                                        )
        -and-                           )
                                        )
OFFICER JOHN DOES 1-10                  )
C/O SPRINGFIELD TOWNSHIP                )
2459 CANFIELD ROAD                      )
AKRON, OH 44312                         )
                                        )
(These individuals are sued in their official  )
and individual capacities)              )
                                        )
                                        )
        Defendants                      )

## **INTRODUCTION**

1.      This case is brought to address violations and damages stemming from the misconduct of various officials, individuals, entities, and police officers in connection with the execution of a search warrant and the removal of property, as well as the refusal to return property belonging to the Plaintiffs.  These violations constituted unlawful retaliation and were unlawful under state and federal law.

2

## PARTIES AND JURISDICTION

2.     Plaintiff Susan K. Lindsley is a citizen of the United States and resides in Summit County, Ohio. Plaintiffs R.M. and G.M. are her minor children.

3.     Defendant Springfield Township is a unit of local government organized under the laws of the State of Ohio. Some of the individual Defendants were also acting pursuant to the express and/or implied direction, policies, and approval of Defendant Springfield Township. Springfield Township is a political subdivision/entity and is subject to being sued pursuant to 42 U.S.C. § 1983.

4.     Defendant Village of Lakemore is a unit of local government organized under the laws of the State of Ohio. Some of the individual Defendants were also acting pursuant to the express and/or implied direction, policies, and approval of Defendant Village of Lakemore. The Village of Lakemore is a political subdivision/entity and is subject to being sued pursuant to 42 U.S.C. § 1983.

5.     Defendant Springfield Township Police Officer Jamie L. Mizer was at all times relevant an employee or agent for Springfield Township and was under a duty to perform her duties in a lawful manner and to obey the Constitution, laws, and statutes of the State of Ohio and the United States. Defendant Mizer is a "person" under 42 U.S.C.§1983 and at all times relevant to this action acted under color of law. Defendant Mizer is sued in her individual and official capacity.

6.     Defendant Village of Lakemore Mayor Richard Justice was at all times relevant the Mayor and official policy maker for the Village of Lakemore and was under a duty to perform his duties in a lawful manner and to obey the Constitution, laws, and statutes of the State of Ohio and the United States. Defendant Justice is a "person" under

42 U.S.C.§1983 and at all times relevant to this action acted under color of law. Defendant Justice is sued in his individual and official capacity.

      7.     Defendant Lakemore Police Chief Kenneth Ray was at all times relevant the Captain for the Springfield Township Police Department, and/ or the Chief of Police for the Village of Lakemore and was under a duty to perform his duties in a lawful manner and to obey the Constitution, laws, and statutes of the State of Ohio and the United States. Defendant Ray is a "person" under 42 U.S.C.§1983 and at all times relevant to this action acted under color of law. Defendant Ray is sued in his individual and official capacity.

      8.     Defendants John Does 1-20 were at all times relevant employees or agents for the Springfield Township and/or the Village of Lakemore, and were under a duty to perform their duties in a lawful manner and to obey the Constitution, laws, and statutes of the State of Ohio and the United States. These Defendants are sued in their individual and official capacities.

      9.     This action is brought pursuant to claims arising under the laws of the State of Ohio, 42 U.S.C. § 1983, and the First, Fourth and Fourteenth Amendments to the United States Constitution. This action is also brought pursuant to 28 U.S.C. §§ 1983, 1985 and 1988 as it is also an action for compensatory damages, punitive damages, and attorney fees.

### FACTS

      10.    Plaintiff Susan Lindsley is an eleven year resident of the Village of Lakemore, Ohio (hereinafter "Lakemore").

      11.    Since approximately 2005, Plaintiff's longtime friend and associate Mr. Richard Cook, by and through his investment companies, began buying properties in and

around Lakemore.  By approximately 2011, Mr. Cook had purchased several properties, and with the assistance of Plaintiff, was leasing such properties to low-income families.

12.     Ms. Lindsley's advocacy for the poor and disadvantaged ran contrary to Mayor Justice's plans to demolish homes (using available grant funding) and to eradicate low-income housing so that the properties could be redeveloped into higher end homes.

13.     In 2013, Ms. Lindsley entered into a written agreement to purchase a home at 1443 Lake Road in Lakemore.  While in the process of determining whether there were any zoning violations against the property, Ms. Lindsley was informed that the home was going to be torn down by the Village of Lakemore.  Ms. Lindsley filed a timely appeal to prevent the demolition.  However, and without providing notice or a hearing, Lakemore destroyed the home.  Ms. Lindsley thereafter attempted to obtain public records from the Village of Lakemore to determine why and how Lakemore was able to demolish the home without even docketing her timely appeal.  Ms. Lindsley thereafter filed a Writ of Mandamus to obtain public records to which the Village had unlawfully denied her access. She discovered that the Village of Lakemore does not have a bound copy (or other organized form) of their local ordinances.  The lack of an actual bound or otherwise accessible copy of Lakemore's ordinances was an issue during the course of the litigation and a source of consternation for Mayor Justice and the Village of Lakemore.  Ms. Lindsley maintained a file with pleadings and other documents related to this incident and lawsuit. Ms. Lindsley eventually obtained some records, which reflect that neither she nor the homeowners were given proper notice of the alleged violations, condemnation, or demolition. The destruction of the home was in violation of state and/or federal law.  Ms. Lindsley investigated her options relative to a civil lawsuit stemming from Lakemore's

misconduct and had a draft Complaint, including state and federal claims, prepared for filing.

14.     Throughout 2013 and 2014, Lakemore, by and through Mayor Justice as well as other officials, inspected and cited properties managed by the Plaintiff for various "housing violations." These citations were unfounded or so inconsequential such that the citations were clearly part of a retaliatory pattern of harassment. Ms. Lindsley maintained all records regarding these searches and citations as further evidence of unlawful harassment by the Village of Lakemore. These sort of warrantless inspections of rental property were subsequently ruled unconstitutional.

15.     In 2015, Ms. Lindsley began talking with other residents who were concerned that the Village of Lakemore had awarded hundreds of thousands of dollars in unbid contracts for the surveying of properties to be demolished, road work, and other engineering, to one company, CT Consultants, by and through CT Consultants' agent/employee, Mr. John Frola. Ms. Lindsley was concerned because these contracts were not part of a public bidding process and because of the expenditure of taxpayer dollars. Ms. Lindsley thereafter made a public records request for information regarding contracts between Lakemore and CT Consultants as well as other related documents. Ms. Lindsley began compiling information and created a file specifically containing information regarding CT Consultants and the Village of Lakemore. In approximately September of 2015, Ms. Lindsley determined that Lakemore Village council had passed a resolution appointing CT Consultants as the Village Engineer. However, Ms. Lindsley was unable to find records of any bidding process by which CT Consultants was retained. Lakemore officials continually refused to provide relevant public records and ordinances as she had

requested.  Despite assurances stemming from Ms. Lindsley's lawsuit regarding the Village of Lakemore's ordinances, the Village of Lakemore had still not organized, bound, or otherwise make their ordinances accessible or decipherable to the public.

16. Ms. Lindsley continued to make public records requests, attempting to track grant monies awarded by the state from the Moving Ohio Forward project, and became progressively more suspicions that there was some illegal activity occurring. Plaintiff made lenghly, detailed written complaints to the Ohio Attorney General and the state auditor. She formulated a list of potential crimes she believed may be being perpetrated by elected officials, including  but not limited to Engaging in a Pattern of Corrupt Activity, R.C. 2923.32(A)(1) , Conspiracy, R.C. 2923.01 , Theft in office, R.C. 2921.41(A)(1)(2) as to funds unaccounted for, Tampering with Records, R.C. 2913.42(A)(1)-(B)(4) and Tampering with Evidence, R.C. 2921.12(A)(1) as to missing documents that are public records, Bribery, R.C. 2921.02 F-3, as to a public official's acceptance of tangible gifts from contractors,  Attempting Securing By Deception, R.C. 2923.02 & 2913.43(A)(1)(2),  as to the seizure of a private citizen's vehicle and property, Having an Unlawful Interest in a Public Contract, R.C. 2921.42(A)(1) F-4, as to the expenditure of the grant funds.

17.     Ms. Lindsley ran for Mayor of the Village of Lakemore in November, 2015. At a "candidates' night", whereby the public is invited to hear the candidates speak and to ask the candidates questions, Ms. Lindsley again brought up the issue of the contracts between CT Consultants and the Village of Lakemore, as well as issues regarding the lack of access to public records and the Village's ordinances.  Ms. Lindsley raised these concerns as campaign issues as they were clearly matters of public concern.  Ms. Lindsley

had raised these issues repeatedly in the past and was running for office, in part, to call attention to the Village of Lakemore's methods and lack of transparency.

18.     In December 2015, Lakemore Officer Mizer happened by Lakemore resident Andrew Miller's home. Mr. Miller had not contacted the police or requested any police assistance, he was acquainted with Ms. Mizer and they had a friendly relationship. At the time Officer Mizer went to Mr. Miller's home, Mr. Miller's home was in the midst of a tax foreclosure.     Officer Mizer began discussing the terms of Mr. Miller's homeownership with him and the fact that Ms. Lindsley had arranged for Mr. Miller to buy the home. Officer Mizer told Miller that Ms. Lindsley and/or Mr. Cook had defrauded Mr. Miller.     After speaking with Mr. Miller, Officer Mizer then spoke with Springfield Township Captain Ken Ray.  Captain Ray indicated that he and Village officials had been investigating Plaintiffs Lindsley and Mr. Cook since approximately 2012 for possible fraudulent real estate transactions. Ray was unable to find any evidence of a crime, and Springfield Police detectives had declined to investigate the matter. Despite the complete absence of any criminal wrongdoing, Springfield Police Capt. Ray proceeded to assign part-time Springfield Patrol Officer Mizer to the full-time job of investigating Plaintiff Ms. Susan Lindsley and her associate Mr. Richard Cook, without regard for the fact that she was a Patrol Officer, and not a detective; and despite the fact that Ray was aware Mizer had no experience or training in real estate law. Ms. Mizer was permitted to work overtime, which was extremely beneficial to her personal financial situation.

19.     Due to the fact that the Village of Lakemore had been declared in a state of Fiscal Emergency, the Village was unable to maintain their Police Dept. and had entered into a contract with Springfield Township for policing services.  As Captain of the

Springfield Police Department, and the former Police Chief for the Village of Lakemore, Capt. Ray answered directly to, and obtained directives from, Lakemore Mayor Justice. After exiting Fiscal Emergency, Lakemore cancelled their contract, and reopened the Lakemore Department, again with Ray as Chief.

20.     Officer Mizer, having absolutely no understanding of real estate, financing, or property law, nevertheless erroneously concluded that Ms. Lindsley had defrauded Mr. Miller out of seven thousand five hundred dollars ($7,500.00).

21.     Officer Mizer, along with Captain Ray and Mayor Justice, thereafter used this bogus evidence of "fraud" to proceed along a course of outright harassment and unlawful persecution. As such, and despite the fact that no person had contacted the police or complained of any fraud, Officer Mizer went to many private homes, even in other cities such as Stow and Akron, under the guise of an expanded criminal investigation. She extensively interviewed residents hoping to find some evidence of criminal activity.

22.     About January, 2016, Officer Mizer approached Samantha Becker regarding the purchase of her home from Mr. Cook's company, TMK. Ms. Becker had not requested police assistance nor had she any reason to believe that she had been the victim of fraud relative to the purchase of her home. Despite Ms. Becker not requesting or needing police assistance, Officer Mizer visited Ms. Becker and began questioning her regarding the terms of her home purchase. Officer Mizer called Ms. Becker's attention to the conveyance form associated with the purchase, and apparently Mizer believed that this form indicated that Ms. Becker had obtained a loan from the Veteran's Administration. It did, in fact, *not* indicate any VA loan. Mizer simply didn't know how to read the form. Officer Mizer told Ms. Becker that Officer Mizer was investigating this (nonexistent) V.A.

9

loan as it was fraudulent and a crime. Ms. Becker was shocked and terrified at the implication that she had somehow fraudulently obtained a V.A. loan. Officer Mizer's investigation then shifted to forgery. Officer Mizer began questioning Ms. Becker regarding her signature on many of the purchase documents, including but not limited to the mortgage. According to Officer Mizer, Ms. Becker stated that her signatures had been forged on the real estate documents. (Ms. Becker, however, maintains that she *never* told Officer Mizer that her signatures were forgeries, only that she didn't know what she signed and couldn't recall.)

23.     Upon information and belief, Officer Mizer was able to pressure Ms. Becker into lying about forged signatures by making the threat of criminal prosecution stemming from Ms. Becker's "fraudulent V.A. loans." Ms. Becker's signatures were not forged and Officer Mizer should have been fully aware of this fact.

24.     Despite obvious evidence that no fraud had actually occurred, Springfield Officer Mizer used this single, false allegation of forgery to obtain search warrants for a "pattern of criminal activity". Officer Mizer drafted an affidavit in support of the search warrant which improperly included inferences and conclusions that usurped the authority of the Court. The facts in Officer Mizer's affidavit were not actually empirical facts; rather, they were undisclosed conclusions. Officer Mizer was also fully aware that the documents regarding Ms. Becker's home purchase were between Mr. Becker and TMK, Inc., located at 5 North Arlington Street, Akron, OH, 44305. Despite this fact, and in furtherance of the Defendants' conspiracy to harm all of the Plaintiffs, Officer Mizer obtained a search warrant for not only TMK's offices, but also Mr. Cook's private residence and Ms.

Lindsley's private residence, *absent even a bare allegation by Mizer that evidence of an alleged crime might be found at those locations.*

25.     Moreover, the search warrant authored by Officer Mizer search warrant was manifestly overbroad and unreasonable.  Her search warrant authorized the police to take " *Quit Claim Deeds, Conveyances, Private Mortgage Loans, Property Tax Records, Personal Identification records of victims, Eviction Notices, Warranty Deeds, Deeds in Lieu of Foreclosure, and other real estate related documents recorded through Summit County Fiscal Office, Summit County Court of Common Pleas, and Akron Municipal Court, Log Books, Records, Payment Receipts, Notes, Customer Identification Records, Ledgers, Passwords, Software Programs, and other records relating to the transportation ordering, and distribution of property and personal identification or electronic media regarding real estate transactions,  Lock Boxes, Safes, or any item used to Preserve, Conceal, or Protect Documents and Maintain control of illegal personal identification documents, real estate record listed in part 1 , or documentary evidence, U.S. Currency stored and obtained through the commission of illegal activities, Indication of Occupancy, Residency, and/or ownership of the premise described above or vehicles located thereon. Including but not limited to utility bills, telephone bills, cancelled envelopes, keys, titles, and vehicle registrations belonging to suspects, and victims, any and all telephones, including memory devices and associated peripheral equipment, including automatic dialers, speed dialers, programmable telephone dialing or signaling devices, electronic tone generating devices: any and all computer hardware, including but not limited to, computer; hardware bearing the make (unknown), central processing units, external and internal drives and external storage equipment or media, terminals or*

*video display units, together with peripheral equipment such as keyboard, printers, modems, or acoustic couplers, automatic dialers, speed dialers, or signaling devices, electronic tone generating devices, any and all computer or data processing software, or data including, but not limited, hard disks, floppy disks, cassette tapes, video cassette tapers, magnetic tapers, integral RAM or ROM units, and any other permanent or transient storage devices; the following records or documents contained on paper in handwritten, typed, photocopied, or printed form, or stored on many other type of media, including but not limited to, telephone and communications activity and service Billing records, computer electronic and voice mail system information, access numbers, passwords, personal, identification numbers (PINS), telephone and address directories, logs, notes, emails, memoranda and correspondence relating to the operation of the electronic equipment or other media or software listed herein, any electronic and voice mail systems, information reflecting the use of a credit card or credit services to obtain property goods or services, any and all other fruits and instrumentality's of crimes related to: 2913.42, 2913.02, 2913.31M, 2913.43, 2913.49, data that will be contained on cassette tapes, video tapes, and in electronic and machine-readable media which in not readable by the Affiant and authorized officials assisting is the search in it's present state, authorization is given to these persons to seize, listen to, read, review, copy and maintain the above described property, and to convert it to human-readable form as necessary, being advised that data stored in computer and telephone memory machines may be lost if disconnected from the electrical power source.*"

26. On March 16, 2016, and based on Officer Mizer's misrepresentations and inferences contained in her affidavit and search warrant, dozens of law enforcement agents raided Mr. Cook's home, Ms. Lindsley's home, and the TMK offices.

27. The raid at Ms. Lindsley's home was particularly egregious. The officers conducted the search as if they were raiding the home of a notorious drug dealer. Approximately eight officers burst into Ms. Lindsley's home, without first knocking and announcing, in full gear and with assault weapons.  Ms. Lindsley was home with her children, (G.M., age 5; R. M., age 8; Jeanna Butler, 18; Joshua Novisky, 19; and Jacob Novisky, 23). The officers swarmed the interior of the home and awoke the sleeping children while brandishing assault weapons. During the course of the raid, Springfield officers could be heard speaking with Mayor Justice on the telephone, informing him the progress of the search and communicating with him regarding details of the raid.

28.     The Springfield Police, including but not limited to Captain Kenneth Ray, Jamie Mizer,  and approximately five (5) other Springfield Township John Doe Officers took every piece of paper, writings, journals, documents, letters, and a large amount of books from Ms. Lindsley's home.  The Springfield Police Defendants seized all keys , computers, cell phones, family videos, coloring books, newspaper clippings, recipes, children's school papers and report cards, greeting cards, photographs, children's books, family records, the personal identification documents of everyone in the household, as well as tax, educational, medical, and social security documents belonging to not only members of the household, but also more than two dozen other individuals. The documents taken included Ms. Lindsley's files regarding CT Consultants and the Village of Lakemore; the documents regarding Mayor Justice, Captain Ray and the Springfield Police department's

illegal seizure of one Mr. Marshall Dupert's truck; the records and information regarding

the demolished Village of Lakemore home which also included an unfiled civil Complaint;

Ms. Lindsley's campaign materials (campaign signs, materials from the Board of Elections,

postcards, campaign literature, and letters to the editors of local newspapers), and the

complaints of possible corruption that Ms. Lindsley had filed with the State of Ohio. The

breadth and volume of records, items. personal property, business information, and other

documents taken was well beyond the scope of the original search warrant.

29.     Plaintiff Ms. Lindsley was completely devastated by this raid. Ms.

Lindsley's entire home was ransacked, as the search was not limited to places where the

items sought could have been reasonably be expected to be found. Her 8 year old daughter

was so terrified that she refused to go back into her bedroom, where her dressers, bed and

possessions had been upended.  Ms. Lindsley's 5 year old son could not understand why

policemen with guns had dumped out his toy boxes and bookshelves, trampling his toys

and possessions.  Multiple Officers went about the small community spreading lies and

rumors, including that Plaintiffs had been arrested and charged with "500 felonies", when

in fact, no one was ever arrested or charged with any crime.  These raids subjected Ms.

Lindsley and her family to an unimaginable amount of stress, grief, embarrassment, shock,

and public humiliation.

30.     Further, Ms. Lindsley's filing cabinet was a safe repository of documents

for literally dozens of her clients that were serviced by a 501(c)(3) charitable organization

of which Ms. Lindsley is the volunteer director. The charity partnered with the Ohio

Benefits Bank for nearly a decade, which is a free service that helps disadvantaged and

low-income individuals to apply for various government programs such as social security

disability, food stamps, medical insurance and the like. Ms. Lindsley had, for upwards of fifteen years, maintained files for clients of the Nonprofit, containing personal identification documents, confidential medical records, tax returns and other documents which would be nearly impossible for  homeless and transient people to replace.  It was shocking to the community that Ms. Lindsley's home was raided , a person many had trusted for decades to help them access community programs and services .

31.     Ms. Lindsley and Mr. Cook retained counsel to help them regain possession of their property.  For two months Springfield Township refused to return any property despite the fact that they had obviously taken possession of documents and records that had nothing to do with any alleged unlawful business scheme.  It was not until May of 2016 when Springfield Township released a small amount of items such as some personal identification documents, (newly broken) computer equipment, and boxes containing miscellaneous mail and catalogues.

32.     Thereafter, on or about May 23rd, 2016 a Complaint was filed in an attempt to recover the unlawfully seized property.  After much harraunging, Mr. Cook and Ms. Lindsley were permitted to survey the evidence room and to mark any documents which were necessary for them to attempt to conduct business.  However, once inside the evidence room, Mr. Cook and Ms. Lindsley discovered that the records from Whole-Sale Bedding, Inc., TMK, Ms. Lindsley, and Mr. Cook's had been disorganized and intermingled such that it was impossible to identify, let alone retrieve, the necessary information and records. Not only were clearly marked files taken out of order and/or misplaced, documents and papers within folders were misplaced or missing altogether.  The evidence room was not secure.

33.     By August of 2016, the Summit County prosecutor had communicated to the Springfield Police that they had no objection to Springfield Township returning the seized items. Yet, Springfield Township refused to return the illegally seized property until *April of 2017.*

34.     Ms. Lindsley's laptop computer keyboard had also been broken, and her computer monitors were not returned at all. Dozens of Ms. Lindsley's campaign signs were also missing, even the large 4'x8' signs. The thousands of documents that were returned came back in such a state of disarray that determining which documents are actually missing is almost impossible. Some of the children's artwork and school papers were missing or destroyed.

35.     Another example of how far the Defendants were willing to go to in order to harass and damage the Plaintiff borders on the absurd. Plaintiff owned various rental properties, in and around Lakemore. Mr. Cook initiated an eviction proceeding against tenant based on failure to pay rent. At the eviction proceedings, the tenant attended with Officer Mizer. Officer Mizer, *on Village of Springfield Police letterhead,* filed pleadings and otherwise took an active role in representing the tenant *who admitted that she failed to pay.* Indeed, one reason she failed to pay Mr. Cook's rent was because Officer Mizer told her that "if I were you, I wouldn't pay him (Mr. Cook) rent."

36.     Officer Mizer also endeavored to assist a Ms. Jennifer Scott. Ms. Scott, a tenant of Ms. Lindsley's Akron rental house, had her home raided by the police for manufacturing of methamphetamine. Ohio Landlord Tenant Law *requires* landlords to evict tenants when the landlord has actual knowledge of or reasonable cause to believe that the tenant, members of the tenants' household, or persons on the property with the consent

16

of the tenant, are engaged in drug activity. Ms. Lindsley commenced eviction proceedings against Ms. Scott in April, 2016. Ms. Scott had been arrested on Felony drug and child endangering charges. Remarkably, Springfield Township Officer Mizer appeared in housing court on behalf of Ms. Scott. Officer Mizer falsely testified under oath that Ms. Scott had no lease, and therefore, could not be evicted. Aside from the rather obvious problems associated with Officer Mizer appearing as a Springfield Township Police Officer in housing court on behalf of a woman arrested for drug manufacturing, is the less obvious issue of Officer Mizer testifying in Court that Ms. Scott did not have a signed lease agreement when, in fact, Ms. Scott had signed a lease *which was eventually returned to Ms. Lindsley with a police evidence sticker affixed to it.* Officer Mizer engaged in *ex parte* communications with the Magistrate Judge, who then denied the eviction and allowed the drug manufacturers to continue to live in Ms. Lindsley's home without paying rent.

37.     As a result of Officer Mizer's incredulous conduct, complaints were filed with the Ohio Supreme Court Disciplinary Council that Officer Mizer was engaged in the unauthorized practice of law. The Ohio Supreme Court Disciplinary Council agreed and made the determination that Officer Mizer was clearly engaging in the unauthorized practice of law. The Ohio Supreme Court declined to prosecute Officer Mizer, however, based on the Springfield Police Department assurance to the Supreme Court that these were isolated incidents.

38.     Officer Mizer, along with Mayor Justice, Captain Ray and other Defendants, conspired to destroy the Plaintiffs through an abuse of their authority and power. The Defendants were not satisfied with improperly invoking a criminal process to damage the Plaintiff and they were not satisfied with improperly influencing civil eviction

proceedings, either. After the March 16, 2016 raid, in June, 2016, Officer Mizer and other Defendants initiated a different tact to harm the Plaintiff. Officer Mizer again went to Andrew Miller, and suggested that he file a civil lawsuit against the Plaintiff.

39.    Springfield Officer Mizer repeatedly met with Miller's counsel on behalf of Miller, and provided Miller's counsel with the "Facts" which were contained in a civil Complaint filed against Ms. Lindsley and Mr. Cook. Officer Mizer, acting under color of law, continued to regularly meet with these attorneys, providing them with confidential information she had discovered from the materials improperly obtained through the raid. Upon information and belief, Ms. Mizer directed and assisted various individuals in and around Lakemore to file frivolous civil Complaints in Common Pleas Court against Ms. Lindsley. Officer Mizer selectively removed documents and records from the evidence room which were then used to draft *(4) four more civil lawsuits* against Ms. Lindsley and Mr. Cook, Ms. Lindsley's son Jacob Novisky, Mr. Cook's son Kevin Cook, Middlebury Banc. Inc., Shady Lane LLC, T-M-K King, Inc., Summit Non Profit Housing, Inc., Middlebury Redevelopment Inc., and John Does 1-10. These lawsuits included, but were not limited to, the following allegations:

-    A Ms. Lauren Gowin alleged that there was mold in her apartment and it made her sick. Her Complaint was amended to include Gowin's live-in boyfriend, who claimed the mold also made him and their cat sick.

-    A Mr. Richard Berger alleged in part that he was also sick from conditions in his apartment, including either mold and/or lead paint. Mrs. Berger refused to participate in this lawsuit. Ultimately, Mr. and Mrs. Berger

18

> confided to Ms. Lindsley that Officer Mizer and Mayor Justice <u>prompted them to file their lawsuit</u>.

- Plaintiff Andrew Miller's suit alleged in part that he was defrauded, and that Mr. Cook slandered him, however he later denied making most of the allegations included in the complaint.

- Plaintiff Samantha Becker's suit claimed in part that she did not sign the real estate documents, and that her signature was forged; however she later recanted these allegations, stating that she did sign documents.

- Plaintiff Kevin Dupert, although he had no documentation whatsoever to support his absurd allegations, set forth the impossible claim in part that he was cheated out of a potential future interest in real estate, and that Mr. Cook and/or Ms. Lindsley improperly evicted him and "*converted his 1982 model console television for their own use*." Unfortunately, Mr. Dupert has since passed away from a heart attack induced by chronic methamphetamine use while running on foot from police officers attempting to apprehend him for driving with a suspended license.

40. All of these lawsuits were brought by the same attorneys who represented Officer Mizer in her personal bankruptcy. Remarkably, Officer Mizer met with these attorneys on behalf of all (7) seven civil plaintiffs on an ongoing basis. Not surprisingly, all five (5) of these civil Complaints were eventually dismissed by Plaintiffs, after it became apparent that nobody was arrested or charged with a crime, and that Mr. Cook's seized money would be returned to him, (and no longer in the hands of the police department). Some of the

19

former plaintiffs in these civil suits have since apologized for filing suit in the first place, stating that they just did as Officer Mizer told them, for fear of being arrested.

41.  Officer Mizer devoted many months to a what can only be described as a campaign on behalf of Mayor Justice to destroy Plaintiff personally and financially.  Officer Mizer spent hundreds of taxpayer hours locating and interviewing current and former tenants of Plaintiff, business associates, and doing such outrageous things as reading Ms. Lindsley's highly personal college love letters aloud over the phone to private citizens.  She told people that Plaintiff was a "phony" Notary Public and not actually commissioned.  She questioned tenants about their homes in depth, advised tenants not to pay rent, informed them that they would have to move,  and told dozens of people that Ms. Lindsley was going to prison.  She also met with many agencies with Ms. Lindsley had business dealings, such as the Akron Metropolitan Housing Authority, the Department of Neighborhood Assistance, and the Summit County Fiscal Office. Ms. Mizer told each person and/or entity that Ms. Lindsley was committing fraud, when, in fact, she knew such statements were false and designed to inflict harm to the Plaintiff.

42. These Defendants, as set forth herein, unlawfully took possession of Plaintiff's property, refused to return the property even after whatever legal justification the Defendants were relying upon had expired or was no longer legally valid, and to this day have failed to return  property belonging to the Plaintiffs.  As such, the Defendants are continuing in their violation of Plaintiffs' rights.

## FIRST CAUSE OF ACTION
### Illegal Search and Seizure

43. Paragraphs 1 through 56 are incorporated by reference herein as if fully rewritten.

44.      The actions of Defendants constituted an unlawful and unjustifiable search of Plaintiff's home and an unlawful seizure of Plaintiffs' property. The Defendants' actions were deliberately indifferent, reckless, wanton and shocking to the conscience, all of which deprived Plaintiff of her civil rights as secured by the Fourth, Fifth and Fourteenth Amendments to the United States Constitution and through 42 U.S. C. §1983. The Defendants' unlawful searches and seizures also violated the laws of the State of Ohio and the Ohio Constitution and were willful, wanton, reckless, malicious and without legal justification.

45.      As a direct and proximate result of the wrongful conduct of Defendants, the Plaintiff sustained injuries, damages and a violation of their rights.

## SECOND CAUSE OF ACTION
### First Amendment Retaliation

46.      Paragraphs 1 through 59 are incorporated by reference herein as if fully rewritten.

47.      The Plaintiff engaged in activities protected under the First Amendment to the United States Constitution. The Defendants unlawfully retaliated against the Plaintiff based on the Plaintiff's exercise of her First Amendment rights. The Defendants actions deprived Plaintiffs of their civil rights as secured by the First Amendment to the United States Constitution and through 42 U.S.C. §1983. The Defendants' actions also violated the laws of the state of Ohio and the Ohio Constitution and were willful, wanton, reckless, malicious and without legal justification.

48.      As a direct and proximate result of the Defendants' wrongful conduct, the Plaintiff sustained injuries, damages and a violation of her rights.

21

### THIRD CAUSE OF ACTION
### Due Process - Procedural and Substantive

49.     Paragraphs 1 through 62 are incorporated by reference herein as if fully rewritten.

50.     The Defendants' actions and omissions, as set forth herein, constitutes a denial of Plaintiffs' rights as secured by the Fifth and Fourteenth Amendments to the United States Constitution.  Plaintiffs were unlawfully denied their property and liberty rights and/or interests without proper or adequate procedures.  Plaintiffs were also denied fundamental rights, including but not limited to the right to privacy.  The Defendants' actions deprived the Plaintiffs of their civil rights as secured by the Fifth and Fourteenth Amendments to the United States Constitution and through 42 U.S.C. §1983.  The Defendants' actions also violated the laws of the state of Ohio and the Ohio Constitution and were willful, wanton, reckless, malicious and without legal justification.

51.     As a direct and proximate result of the Defendants' wrongful conduct, the Plaintiffs sustained injuries, damages and a violation of their rights.

### FOURTH CAUSE OF ACTION
### Denial of Access To Courts

52.     Paragraphs 1 through 65 are incorporated by reference herein as if fully rewritten.

53.     As a direct and proximate result of the Defendants' misconduct, the Plaintiff was denied her ability to access a court of law.  The Defendants' unlawful conduct included, but is not limited to, taking and withholding property and information such that Plaintiff was denied her right to access courts of law as protected by the First Amendment.  The Defendants actions deprived Plaintiff of her civil rights as secured by the First

Amendment to the United States Constitution and through 42 U.S.C. §1983. The Defendants' actions also violated the laws of the state of Ohio and the Ohio Constitution and were wilful, wanton, reckless, malicious and without legal justification.

54.     As a direct and proximate result of the Defendants' wrongful conduct, the Plaintiff sustained injuries, damages and a violation of her rights.

**FIFTH CAUSE OF ACTION**
**Abuse of Process**

55.     Paragraphs 1 through 68 are incorporated by reference herein as if fully rewritten.

56.     The Defendants improperly used civil and criminal legal proceedings for an unintended, malicious, or perverse reason and for which those proceeding were not intended. The Defendants had an improper and ulterior motive in using these processes. As a direct and proximate result of the Defendants' misconduct, the Plaintiff was damaged and otherwise sustained losses. The Defendants' actions deprived Plaintiff of her civil rights as secured by the United States Constitution and through 42 U.S.C. §1983. The Defendants' actions also violated the laws of the state of Ohio and the Ohio Constitution and were wilful, wanton, reckless, malicious and without legal justification.

57.     As a direct and proximate result of the Defendants' wrongful conduct, the Plaintiff sustained injuries, damages and a violation of her rights.

**SIXTH CAUSE OF ACTION**
**Civil Conspiracy**

58.     Paragraphs 1 through 71 are incorporated by reference herein as if fully rewritten.

23

59. The Defendants engaged in a malicious combination to damage, harm, and otherwise deny the Plaintiffs their civil rights, through improper means as set forth herein. As a direct and proximate result of the Defendants' conspiracy, the Plaintiffs were, in fact, harmed, damaged, denied her civil rights and otherwise sustained losses. The Defendants' conspiracy also deprived Plaintiffs of their civil rights as secured by the United States Constitution and through 42 U.S.C. §1983. The Defendants' conspiracy also violated the laws of the state of Ohio and the Ohio Constitution and was wilful, wanton, reckless, malicious and without legal justification.

60. As a direct and proximate result of the Defendants' conspiracy, the Plaintiffs sustained injuries, damages and a violation of their civil rights.

## SEVENTH CAUSE OF ACTION
### Spoliation of Evidence

61. Paragraphs 1 through 74 are incorporated by reference herein as if fully rewritten.

62. The Defendants were aware of pending or probable litigation involving the Plaintiff and the Defendants were aware that litigation existed or was probable. Despite this fact, the Defendants engaged in the willful destruction of evidence with the design to disrupt Plaintiff's litigation. Defendants' destruction of evidence has, in fact, disrupted Plaintiff's case and damages have been proximately incurred as a result of Defendants' acts. The Defendants' spoliation also violated the laws of the state of Ohio and the Ohio Constitution and was wilful, wanton, reckless, malicious and without legal justification.

24

63. As a direct and proximate result of the Defendants' misconduct, the Plaintiff sustained injuries, damages and a violation of their civil rights.

### EIGHTH CAUSE OF ACTION
### Monell Claim: Springfield Township and Village of Lakemore

64. Paragraphs 1 through 77 are incorporated by reference herein as if fully rewritten.

65. The Defendants Springfield Township and Village of Lakemore both had policies, practices and customs that directly caused violations of Plaintiff's rights. The Village of Lakemore adopted a policy of failing to maintain an organized and accessible version of their ordinances. This policy not only resulted in Lakemore officials making up local "laws" as they went along, but also resulted in individuals not being able to know what was permitted or prohibited under Lakemore ordinances. To the extent this absence of ordinance organization, verification, and access was not an official policy of Lakemore, it was a custom of practice. Similarly, Springfield Township had a custom, policy and/or practice of permitting its police to engage in conduct that was contrary to the laws of the State of Ohio and the Constitution of the United States as set forth herein. Springfield Township and the Village of Lakemore have pervasive and long-standing customs and practices that directly cause violations of individuals' Constitutional rights and were foreseeable. The Village of Lakemore and Springfield Township also failed to adequately train, screen supervise and discipline their police and other officials. When it became apparent to both Springfield Township and the Village of Lakemore that their officers were not adequately trained, disciplined, supervised or screened, these municipal entities failed to take remedial measures, thus all but guaranteeing the violation of rights such as those

suffered by the Plaintiff.  Lastly, Mayor Justice's and Captain Ray's directives and instructions to Officer Mizer *vis a vis* the Plaintiffs were clearly unconstitutional and made by individuals with final decision making authority.  Under these circumstances, these policymakers subjected the Village of Lakemore and Springfield Township to liability pursuant to *Monell v. Dept of Soc. Servs.*, 436 U.S. 658, 701 (1978).

66.     As a direct and proximate result of the Village of Lakemore and Springfield Township's misconduct, the Plaintiffs sustained injuries, damages and a violation of their rights.

### NINTH CAUSE OF ACTION
### Tortious Interference with a Business Relationship/Contract

67.     Paragraphs 1 through 80 are incorporated by reference herein as if fully rewritten.

68.     The Defendants were aware of the existence of valid contracts and/or business relationships which had the existence of a recognizable economic expectancy between the Plaintiff and various third-parties.  The Defendants intentionally and improperly interfered with these contracts, business relationships and/or economic expectancies.  As a direct and proximate result of Defendants' interference, the Plaintiff sustained measurable monetary damages.  The Defendants' tortious interference also violated the laws of the state of Ohio and the Ohio Constitution and was wilful, wanton, reckless, malicious and without legal justification.

69.     As a direct and proximate result of the Defendants' misconduct, the Plaintiff sustained injuries, damages and a violation of her rights.

## TENTH CAUSE OF ACTION
### Wilful, Wanton, Reckless, Malicious Conduct

70.     Paragraphs 1 through 83 are incorporated by reference herein as if fully rewritten.

71.     The Defendants engaged in actions and omissions, as set forth herein, that constituted wilful, wanton, reckless and/or malicious conduct.  Their conduct was so egregious such that it precludes them from being entitled to the defenses and immunities set forth in Ohio Revised Code § 2744.01, et seq.,.

72.     As a direct and proximate result of the Defendants' misconduct, the Plaintiffs sustained injuries, damages and a violation of their rights.

## ELEVENTH CAUSE OF ACTION
### Failure to Intervene

73.     Paragraphs 1 through 86 are incorporated by reference herein as if fully rewritten.

74.     The Defendants knew or should have known that other Defendants, as set forth herein, were violating Plaintiffs rights as protected under the United States Constitution and the laws of the State of Ohio.  These Defendants also had the opportunity to stop the violation of Plaintiff's rights and/or the ability to prevent the violations from continuing.  Despite this knowledge and opportunity, these Defendants failed to take affirmative steps to prevent the Plaintiffs from having their rights further violated.

75.     As a direct and proximate result of the Defendants' misconduct, the Plaintiffs sustained injuries, damages and a violation of their rights.

## TWELFTH CAUSE OF ACTION
### Defamation: Libel and Slander - Per Se and Per Quod
### and False Light

76.     Paragraphs 1 through 89 are incorporated by reference herein as if fully rewritten.

77.     The Defendants repeatedly made false statements about the Plaintiff to third parties while not having the legal privilege to do so.  The Defendants made these false statements knowingly and/or maliciously and/or with a reckless disregard for the veracity of the statements.  Some of the Defendants' false statements regarding the Plaintiffs were defamatory *per se* in that they carried a presumption of falsity, while other statements were defamatory *per quod* in that Plaintiffs can establish special harm and damages flowing from Defendants' defamatory statements.   The Defendants also engaged in an unlawful invasion into Plaintiffs' private matters thus violating Ohio's 'false light' laws.   The Defendants' misconduct as set forth herein also violated other laws of the State of Ohio and the Ohio Constitution and was wilful, wanton, reckless, malicious and without legal justification.

78.     As a direct and proximate result of the Defendants' misconduct, the Plaintiffs sustained injuries, damages and a violation of their rights.

### DAMAGES

79.     The foregoing paragraphs are incorporated by reference herein as if fully rewritten.

80.     As a direct and proximate result of the Defendants' acts, omissions and misconduct, the Plaintiffs suffered losses, damages, incurred attorney fees, and suffered violations of their rights as secured by the State of Ohio and the United States

Constitutional. Plaintiffs also suffered losses, damages and other injuries as well as economic and non-economic losses, some or all of which may be permanent.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray for that this Court:

(A)    Award Plaintiffs compensatory and consequential damages for all the injuries and damages identified in an amount to be shown at trial;

(B)    Award punitive damages against the individual Defendants in an amount to be shown at trial;

(C)    Equitable relief, including without limitation, that the Village of Lakemore and Springfield Township be made to return all of Plaintiffs' property, and to promulgate, adopt, train, maintain and enforce appropriate policies to prevent future instances of the type of misconduct described herein;

(D)    Award Plaintiffs the costs of this action and other costs that may be associated with this action; and

(E)    Grant Plaintiffs attorney fees and other relief this Court deems equitable, necessary, and just.

_/s/ Susan Lindsley_____
Pro Se
PO Box 397
Lakemore OH 44250
Telephone:    330-808-9432
E-Mail:    sklindsley@gmail.com

*/s/ Paul Kelley*
Paul Kelley (0088148)
540 S Water St
Kent OH 44240
Tel: (330) 217-8251
paul.kelley.law4u@gmail.com
Counsel for Plaintiffs,
R.M. and G.M., Minor Children

## JURY DEMAND

Plaintiffs hereby demands a trial by jury on all issues so triable.

*/s/ Susan Lindsley*        .
Susan Lindsley, Pro Se

*/s/ Paul M. Kelley*_____
Paul Kelley, for R.M. and G.M.

CV-2020-03-0842  MICHAEL, KATHRYN  03/03/2020 12:57:50 PM  CMCO  Page 1 of 2

**Summit County Court of Common Pleas**
**Civil Division**

Print Form

Reset Form

**Instructions:** Complete the following form and file with the Summit County Clerk of Courts - Civil Divsion, located at: 205 South High Street, 1st Floor, Akron, Ohio 44308.

| Case Caption: | |
|---|---|

Susan Lindsley

Plaintiff

v.

Case Number  refiling of 2018-03-1223

Springfield Township

Defendant

**INSTRUCTIONS FOR SERVICE**

**To Clerk:** You are hereby requestd to make service upon the following by:

☐ FedEx
☒ Certified Mail
☐ Regular Mail
☐ Sheriff Service (Personal)
☐ Sheriff Service (Personal or Residential)
☐ Personal Service Process Server: _____

**Please Serve the following pleadings:**  Complaint

_____

_____

**Parties to be served:**

Name: Springfield Township

Address  2459 CANFIELD ROAD

Address  _____

City  Akron  State OH  Zip 44312

Name: Village of Lakemoe

Address  1400 Main St

Address  _____

City  Lakemore  State OH  Zip 44250

Name: Jamie Mizer

Address  506 LESSIG AVE

Address  _____

City  Akron  State OH  Zip 44312

Name: Kenneth Ray, Chief

Address  c/o Village of Lakemore

Address  1400 Main St

City  Lakemore  State OH  Zip 44250

s/ _____

Attorney for Plaintiff (or pro se litigant)

Supreme Ct #

CV Form 014

Rev 1.1 20131002-08/17

CV-2020-03-0348     MICHAEL, KATHRYN     03/03/2020 12:57:50 PM     CMCO     Page 2 of 2

**Summit County Court of Common Pleas**
**Civil Division**

Print Form

Reset Form

**Instructions:** Complete the following form and file with the Summit County Clerk of Courts - Civil Divsion, located at: 205 South High Street, 1st Floor, Akron, Ohio 44308.

**Case Caption:**

Susan Lindsley

Plaintiff

v.          Case Number    refiling of 2018-03-1223

Springfield Township

Defendant          **INSTRUCTIONS FOR SERVICE**

**To Clerk:** You are hereby requestd to make service upon the following by:

☐ FedEx
☒ Certified Mail
☐ Regular Mail
☐ Sheriff Service (Personal)
☐ Sheriff Service (Personal or Residential)
☐ Personal Service Process Server: _____

**Please Serve the following pleadings:**    Complaint _____

_____

_____

**Parties to be served:**

Name: officers John Does 1-10          Name: _____

Address   c/o Sprinfield Township          Address _____

Address   2459 Canfield Rd          Address _____

City   Akron    State OH   Zip 44312      City _____ State ____ Zip _____

Name: Richard Justice          Name: _____

Address   PO box 163          Address _____

Address _____      Address _____

City   Lakemore    State OH   Zip 44250     City _____ State ____ Zip _____

s/ Paul Kelley          0088148

Attorney for Plaintiff (or pro se litigant)    Supreme Ct #

CV Form 014          Rev 1.1 20131002-08/17

# IN THE COURT OF COMMON PLEAS, SUMMIT COUNTY, OHIO

CASE NUMBER:   CV-2020-03-0842

SUSAN K. LINDSLEY
PO Box 397
Lakemore, OH, 44250

-VS-                                                          **SUMMONS**

SPRINGFIELD TOWNSHIP
2459 Canfield Rd
Akron,   OH   44312

**TO the following:**

CHIEF OF POLICE KENNETH RAY
c/o Village of Lakemore
1400 Main St
Lakemore, OH   44250

You have been named as a defendant(s) in a complaint filed in the Summit County Court of Common Pleas, Summit County Courthouse, 205 S. High St., Akron, Ohio, 44308.

A copy of the COMPLAINT is attached hereto.   The name and address of the Plaintiff's attorney is:

PRO SE
Same as party

,

**You are hereby summoned and required to serve upon the attorney listed above, or upon the party if they have no attorney of record, a copy of an answer to the COMPLAINT within twenty-eight (28) days after service of this summon on you, exclusive of the day of service.   Your answer must be filed with the Court within three days after the service of a copy of the answer on the attorney, or upon the party, if there is no attorney of record.**

**If you fail to appear and defend, judgment may be rendered against you for the relief demanded in the COMPLAINT.**

Sandra Kurt
Summit County Clerk of Courts

March 4, 2020

## IN THE COURT OF COMMON PLEAS, SUMMIT COUNTY, OHIO

CASE NUMBER:   CV-2020-03-0842

SUSAN K. LINDSLEY
PO Box 397
Lakemore, OH, 44250

-VS-                                                                              **SUMMONS**

SPRINGFIELD TOWNSHIP
2459 Canfield Rd
Akron,   OH   44312

**TO the following:**

OFFICER JAMIE L. MIZER
506 Lessig Ave
Akron, OH   44312

You have been named as a defendant(s) in a complaint filed in the Summit County Court of Common Pleas, Summit County Courthouse, 205 S. High St., Akron, Ohio, 44308.

A copy of the COMPLAINT is attached hereto.   The name and address of the Plaintiff's attorney is:

PRO SE
Same as party
'

**You are hereby summoned and required to serve upon the attorney listed above, or upon the party if they have no attorney of record, a copy of an answer to the COMPLAINT within twenty-eight (28) days after service of this summon on you, exclusive of the day of service.   Your answer must be filed with the Court within three days after the service of a copy of the answer on the attorney, or upon the party, if there is no attorney of record.**

**If you fail to appear and defend, judgment may be rendered against you for the relief demanded in the COMPLAINT.**

Sandra Kurt
Summit County Clerk of Courts

March 4, 2020

# IN THE COURT OF COMMON PLEAS, SUMMIT COUNTY, OHIO

CASE NUMBER:   CV-2020-03-0842

SUSAN K. LINDSLEY
PO Box 397
Lakemore, OH, 44250

-VS-                                                                          **SUMMONS**

SPRINGFIELD TOWNSHIP
2459 Canfield Rd
Akron,   OH   44312

**TO the following:**

OFFICERS JOHN DOE 1-10
c/o Springfield Township
2459 Canfield Rd
Akron, OH   44312

You have been named as a defendant(s) in a complaint filed in the Summit County Court of Common Pleas, Summit County Courthouse, 205 S. High St., Akron, Ohio, 44308.

A copy of the COMPLAINT is attached hereto.   The name and address of the Plaintiff's attorney is:

PRO SE
Same as party
,

**You are hereby summoned and required to serve upon the attorney listed above, or upon the party if they have no attorney of record, a copy of an answer to the COMPLAINT within twenty-eight (28) days after service of this summon on you, exclusive of the day of service.   Your answer must be filed with the Court within three days after the service of a copy of the answer on the attorney, or upon the party, if there is no attorney of record.**

**If you fail to appear and defend, judgment may be rendered against you for the relief demanded in the COMPLAINT.**

Sandra Kurt
Summit County Clerk of Courts

March 4, 2020

## IN THE COURT OF COMMON PLEAS, SUMMIT COUNTY, OHIO

CASE NUMBER:   CV-2020-03-0842

SUSAN K. LINDSLEY
PO Box 397
Lakemore, OH, 44250

-VS-                                                                    **SUMMONS**

SPRINGFIELD TOWNSHIP
2459 Canfield Rd
Akron,   OH   44312

**TO the following:**

RICHARD JUSTICE
PO Box 163
Lakemore, OH  44250

You have been named as a defendant(s) in a complaint filed in the Summit County Court of Common Pleas, Summit County Courthouse, 205 S. High St., Akron, Ohio, 44308.

A copy of the COMPLAINT is attached hereto.   The name and address of the Plaintiff's attorney is:

PRO SE
Same as party
'

**You are hereby summoned and required to serve upon the attorney listed above, or upon the party if they have no attorney of record, a copy of an answer to the COMPLAINT within twenty-eight (28) days after service of this summon on you, exclusive of the day of service.   Your answer must be filed with the Court within three days after the service of a copy of the answer on the attorney, or upon the party, if there is no attorney of record.**

**If you fail to appear and defend, judgment may be rendered against you for the relief demanded in the COMPLAINT.**

Sandra Kurt
Summit County Clerk of Courts

March 4, 2020

## IN THE COURT OF COMMON PLEAS, SUMMIT COUNTY, OHIO

CASE NUMBER:   CV-2020-03-0842

SUSAN K. LINDSLEY
PO Box 397
Lakemore, OH, 44250

-VS-                                                                    **SUMMONS**

SPRINGFIELD TOWNSHIP
2459 Canfield Rd
Akron,   OH   44312

**TO the following:**

SPRINGFIELD TOWNSHIP
2459 Canfield Rd
Akron, OH   44312

You have been named as a defendant(s) in a complaint filed in the Summit County Court of Common Pleas, Summit County Courthouse, 205 S. High St., Akron, Ohio, 44308.

A copy of the COMPLAINT is attached hereto.   The name and address of the Plaintiff's attorney is:

PRO SE
Same as party
'

**You are hereby summoned and required to serve upon the attorney listed above, or upon the party if they have no attorney of record, a copy of an answer to the COMPLAINT within twenty-eight (28) days after service of this summon on you, exclusive of the day of service.   Your answer must be filed with the Court within three days after the service of a copy of the answer on the attorney, or upon the party, if there is no attorney of record.**

**If you fail to appear and defend, judgment may be rendered against you for the relief demanded in the COMPLAINT.**

Sandra Kurt
Summit County Clerk of Courts

March 4, 2020

# IN THE COURT OF COMMON PLEAS, SUMMIT COUNTY, OHIO

CASE NUMBER:   CV-2020-03-0842

SUSAN K. LINDSLEY
PO Box 397
Lakemore, OH, 44250

-VS-                                                                    **SUMMONS**

SPRINGFIELD TOWNSHIP
2459 Canfield Rd
Akron,   OH   44312

**TO the following:**

VILLAGE OF LAKEMORE
1400 Main St
Lakemore, OH   44250

You have been named as a defendant(s) in a complaint filed in the Summit County Court of Common Pleas, Summit County Courthouse, 205 S. High St., Akron, Ohio, 44308.

A copy of the COMPLAINT is attached hereto.   The name and address of the Plaintiff's attorney is:

PRO SE
Same as party
,

**You are hereby summoned and required to serve upon the attorney listed above, or upon the party if they have no attorney of record, a copy of an answer to the COMPLAINT within twenty-eight (28) days after service of this summon on you, exclusive of the day of service.   Your answer must be filed with the Court within three days after the service of a copy of the answer on the attorney, or upon the party, if there is no attorney of record.**

**If you fail to appear and defend, judgment may be rendered against you for the relief demanded in the COMPLAINT.**

Sandra Kurt
Summit County Clerk of Courts

March 4, 2020

CV-2020-03-0842                MCCARTY, ALISON E.        03/19/2020 15:17:09 PM        INST                    Page 1 of 1

**Summit County Court of Common Pleas**
**Civil Division**

[ Print Form ]

[ Reset Form ]

**Instructions:** Complete the following form and file with the Summit County Clerk of Courts - Civil Divsion, located at: 205 South High Street, 1st Floor, Akron, Ohio 44308.

**Case Caption:**

Susan Lindsley

Plaintiff

v.                                    Case Number    CV 2020 03 0842

Springfield Township

Defendant                                          **INSTRUCTIONS FOR SERVICE**

**To Clerk:** You are hereby requestd to make service upon the following by:

☐ FedEx
☒ Certified Mail
☐ Regular Mail
☐ Sheriff Service (Personal)
☐ Sheriff Service (Personal or Residential)
☐ Personal Service Process Server: _____

**Please Serve the following pleadings:**    Complaint _____
_____
_____

**Parties to be served:**

Name: Jamie Mizer _____          Name: _____

Address   3185 Mayfair Rd _____     Address _____

Address _____            Address _____

City   Akron _____ State OH  Zip 44312    City _____ State ____ Zip _____

Name: _____              Name: _____

Address _____            Address _____

Address _____            Address _____

City _____ State ____ Zip _____        City _____ State ____ Zip _____

                                             s/ susan Lindsley
                                             _____
                                             Attorney for Plaintiff (or pro se litigant)    Supreme Ct #

CV Form 014                                                                Rev 1.1 20131002-08/17